# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:18-CV-269-RJC-DCK

| | |
|---|---|
| DERRICK NEWSON, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> PRINSTON PHARMACEUTICAL, INC., ) <br> ) <br> Defendant. ) <br> ) | **MEMORANDUM AND** <br> **RECOMMENDATION** |

**THIS MATTER IS BEFORE THE COURT** on "Defendant's Partial Motion To Dismiss Plaintiff's Amended Complaint" (Document No. 12). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and is now ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motion be granted in part and denied in part.

## I. BACKGROUND

Plaintiff Derrick Newson ("Plaintiff" or "Newson") initiated this action with the filing of a "Complaint" (Document No. 1) on May 22, 2018. The original Complaint asserted claims against Plaintiff's employer, Defendant Prinston Pharmaceutical Inc. ("Defendant" or "Prinston"), for violation of the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq*. ("FMLA") and violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq*. ("Title VII"). (Document No. 1). Defendant's first "Motion To Dismiss Plaintiff's Complaint" (Document No. 3) was filed on August 6, 2018.

Plaintiff Newson then filed an "Amended Complaint" (Document No. 7) on August 20, 2018. The Amended Complaint asserts the same FMLA and Title VII claims as the original

Complaint, and adds claims for discrimination in violation of the Americans With Disabilities Act, 42 U.S.C. et seq. ("ADA") and wrongful termination in violation of public policy pursuant to the common law of North Carolina. (Document No. 7). Based on Plaintiff's amended pleading, the undersigned issued an "Order" (Document No. 10) on August 30, 2018, directing that Defendant's "Motion To Dismiss Plaintiff's Complaint" (Document No. 3) be denied as moot.

Now pending before the Court is "Defendant's Partial Motion To Dismiss Plaintiff's Amended Complaint" (Document No. 12), filed on September 4, 2018. Defendant seeks dismissal of Counts II-IV in the Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6). (Document No. 12).

The pending motion has been fully briefed and is ripe for review and a recommendation to the Honorable Robert J. Conrad, Jr. See (Document Nos. 12, 13, 14, and 16).

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also, Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

### III. DISCUSSION

#### A. Factual Background

Plaintiff was employed by Defendant Prinston as a Quality Technician II, who was responsible for ensuring the quality of Prinston's pharmaceutical products. (Document No. 7, p. 3; Document No. 13, p. 1). Defendant contends that Plaintiff was actually employed by Generics Bidco II LLC d/b/a Prinston Laboratories. (Document No. 13, p. 1, n. 1). Plaintiff began his employment with Defendant in February 2013. (Document No. 7, p. 3).

On January 19, 2018, Plaintiff informed his manager, Jeremy Allen ("Allen") that he intended to apply for workers compensation due to a wrist injury. Id. Plaintiff contends that his work duties exacerbated the injury and required an extended leave of absence. Id.

On January 20, 2018, Plaintiff, along with another Quality Technician, Jason Howell ("Howell"), inspected cases of expired drug tablets produced by another pharmaceutical company. Id. Plaintiff was expected to review samples of tablets from 40-kilogram drums and submit his findings on forms titled "Acceptable Quality Limit" ("AQL forms"). Id. Plaintiff established a system where he had two sets of forms: a set of AQL forms left blank to be used if a drum failed inspection; and a set of partially pre-filled AQL forms for drums that passed inspection. (Document No. 7, p. 4). Plaintiff contends that there is no policy forbidding this system, and that other employees used similar systems for completing AQL forms.

On January 25, 2018, Plaintiff emailed Susan Delamarter ("Delamarter"), Defendant's human resources ("HR") manager, informing her he would need to take time off for surgery and requesting assistance with an FMLA leave request. Id.

On January 26, 2018, Plaintiff reported to work with several co-workers and was denied entry by on-site security. (Document No. 7, p. 5). Ms. Delamarter subsequently informed Plaintiff he was suspended without pay. Id. Mr. Allen sent Plaintiff a text message on January 29, 2018, directing Plaintiff to meet with him on February 2, 2018. Id. On February 6, 2018, Plaintiff was terminated by Defendant for allegedly "falsifying documentation" on January 20, 2018. Id.

According to the Amended Complaint, Plaintiff had never been written-up or otherwise disciplined while working for Defendant, and his 2017 Performance Review indicated that he met or exceeded expectations in every category. (Document No. 7, p. 6). Plaintiff, who is African-American, contends that two other African-American employees in similar positions were also terminated for falsifying documents. Id. Plaintiff contends that a Caucasian female employed in a similar position, who intentionally fabricated or falsified documents, was written-up but *not* terminated. Id. Moreover, Plaintiff alleges that Jason Howell, who is Caucasian, and conducted

4

the inspection with Plaintiff on January 20, 2018, was not disciplined at all.  (Document No. 7, p. 4).

## B. Motion To Dismiss

Defendant Prinston now moves for dismissal of Plaintiff's Title VII, ADA, and public policy claims – Defendant does not seek dismissal of the FMLA claim.  (Document No. 12; Document No. 13, p. 2).

### 1. Title VII

Defendant first argues that Plaintiff's Title VII race discrimination claim is devoid of factual allegations that would plausibly establish he was terminated on the basis of his race. (Document No. 13, pp. 7-9); see also (Document No. 7, pp. 7-8).  Defendant then notes that in the absence of direct evidence of discrimination:

> a plaintiff can raise an inference of discrimination that an adverse employment action was the product of discrimination via the burden-shifting framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  The elements of a *prima facie* case of Title VII discrimination are: "(1) membership in a protected class; (2) satisfactory job performance;  (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010).  "[T]o state a Title VII claim, a plaintiff must plausibly allege the appropriate causal connection between the plaintiff's protected status . . . and the alleged discrimination . . . . '[N]aked allegations' of a causal connection between the plaintiff's race . . . and the alleged discrimination do not state a plausible Title VII claim." Ricketts v. Logics, LLC, No. 15-293, 2016 U.S. Dist. LEXIS 98044, at *12 (E.D.N.C. July 27, 2016) (quoting McCleary-Evans, 780 F.3d at 585-86)).

(Document No. 13, p. 7).

Defendant contends that Plaintiff has done nothing more than recite the elements of a Title VII claim – without explaining how those outside the protected class received more favorable treatment – therefore, this Title VII claim must be dismissed.  (Document No. 13, pp. 7-8)

5

(citations omitted). Defendant contends that Plaintiff only offers "unsupported speculation that Caucasian employees were treated differently" because he does not show that the Caucasian employees "disciplinary action (or lack thereof) occurred under the *same circumstances*." (Document No. 13, pp. 8-9).

In response, Plaintiff argues that the Amended Complaint identifies two valid comparators. (Document No. 14, p. 4). The first is Howell, who worked in the same position as Plaintiff and conducted the January 20th inspection with him; and the second is a Caucasian employee in a similar position who falsified documents but was not terminated. Id. Plaintiff acknowledges that he does not know all the circumstances of the second comparator but asserts that he has alleged enough to make her status as a comparator plausible. Id. Moreover, Plaintiff argues that the principal cases relied upon by Defendant are distinguishable because those "pleadings did not contain *any* facts connecting plaintiff's race to the challenged employment decision." Id. (citations omitted).

In reply, Defendant re-asserts that the Amended Complaint fails to include sufficient factual allegations to support Plaintiff's Title VII claim. (Document No. 16, pp. 2-5). The crux of Defendant's argument is that Plaintiff has not provided enough detail about the similarity of purported comparators' behavior and/or positions to Plaintiff. Id.

This issue presents a close call. However, at this time, the undersigned is persuaded that Plaintiff has asserted a plausible claim that should survive 12(b)(6) dismissal. While Defendant correctly suggests that Plaintiff has not provided a lot of detail about the identified comparators, the undersigned finds that the allegations are sufficient and that this issue should be further developed through discovery. "Overall, the inquiry simply asks whether there are sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow

6

Case 3:18-cv-00269-RJC-DCK   Document 17   Filed 03/28/19   Page 6 of 11

the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination." Swaso v. Onslow Cty. Bd. of Educ., 698 Fed. Appx. 745, 748 (4th Cir. 2017), as amended (Aug. 11, 2017) (quoting Eaton v. Ind. Dep't of Corr., 657 F.3d 551, 556 (7th Cir. 2011)).

In short, the undersigned finds that Plaintiff has identified "sufficient commonalities on the key variables…." Id. As such, the undersigned will respectfully recommend that Defendant's request to dismiss Plaintiff's Title VII claim (Count II) be **denied**.

### 2. ADA

Next, Defendant contends that Plaintiff's ADA claim must be dismissed as time-barred. (Document No. 13, pp. 10-11). Defendant notes that Plaintiff's ADA "Charge Of Discrimination" No. 430-2018-02833, was filed with the Equal Employment Opportunity Commission ("EEOC") on August 6, 2018. (Document No. 13, p. 10); see also (Document No. 13-1, p. 5). Defendant further notes that the EEOC's "Dismissal And Notice Of Rights" opined on August 15, 2018, that Plaintiff's "charge was not timely filed . . . you waited too long after the date(s) of the alleged discrimination to file your charge." See (Document No. 13, p. 11) (quoting (Document No. 13-1, p. 2)).

In response, Plaintiff notes that he was terminated on February 6, 2018, and that the 180th day after his termination fell on Sunday, August 5, 2018. (Document No. 14, p. 5). As such, his ADA complaint was timely filed with the EEOC on Monday, August 6, 2018. Id. (citing 29 CFR 1614.604(d) and 42 U.S.C.A. §2000e-5).

In reply, Defendant asserts for the first time that Plaintiff was "informed of his termination on February 2, 2018," and thus applying the February 2, 2018 date, his EEOC Charge was due no later than August 1, 2018. (Document No. 16, pp. 5-6). Without any citation, Defendant contends

7

that Plaintiff has admitted that "his discrimination claims, including any alleged ADA disability discrimination claim, began to accrue on the date he received notice of his termination on February 2, 2018." (Document No. 16, p. 6).

The parties agree that Title VII claims for workplace discrimination must be filed with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the alleged unlawful employment practice. (Document No. 13, p. 10; Document No. 14, p. 5); see also 42 U.S.C. § 2000e-5(e)(1) ("A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice)"). However, the parties disagree as to when the Charge had to be filed – Plaintiff argues that his Charge was timely filed on August 6, 2018, and Defendant argues that it should have been filed no later than August 1, 2018.

Defendant relies in part on the EEOC's conclusion (without explanation) that the Charge was not timely filed, and Plaintiff's purported admission that his ADA discrimination claim began to accrue on February 2, 2018. (Document Nos. 13 and 16). So far, the Court has failed to locate Plaintiff's "admission" that February 2, 2018, is the pertinent date for his ADA claim. Instead, the Amended Complaint, the ADA Charge Of Discrimination, and Plaintiff's brief appear to consistently allege that the date of his termination, and the last date of ADA discrimination by Defendant, was February 6, 2018. See (Document Nos. 7, 14, and 14-1).

Although Plaintiff's "Charge Of Discrimination" No. 430-2018-01187, based on alleged racial discrimination, does allege that Plaintiff was informed on February 2, 2018 that he would be discharged effective on February 6, 2018, the undersigned is not convinced that Plaintiff's claim had to be filed within 180 days of February 2, 2018. See (Document No. 13, p. 12). Moreover,

8

Case 3:18-cv-00269-RJC-DCK   Document 17   Filed 03/28/19   Page 8 of 11

Defendant's briefs fail to cite any authority requiring such a conclusion.  (Document Nos. 13 and 16).

The undersigned finds the following caselaw to be instructive here.

> Plaintiff filed her charge with the EEOC on August 12, 2002, claiming that the discrimination against her had occurred from October 3, 2001 to February 13, 2002, **the date of her official termination**.  (*See* Am. Compl. Ex. A.)  The EEOC dismissed the complaint as untimely filed.  (*See id.* Ex. B.)  **This court, however, is not bound by the EEOC's determination as to timeliness**.  *See Weise v. Syracuse Univ.,* 522 F.2d 397, 413 (2d Cir. 1975).  Counting in accordance with Federal Rule of Civil Procedure 6(a) from February 13, 2002 (the last date of discrimination indicated on the charge), Plaintiff's charge was due on August 12, 2002, the date on which it was apparently received.  (*See* Am. Compl. ¶ 8.)  The charge thus appears to have been timely filed with the EEOC, at least in part.
> . . .
> Here, **at least one discrete act occurred within the 180–day deadline:  Plaintiff's official firing** on February 12, 2002.  The firing, as a discrete act, is actionable.

Sheaffer v. Cty. of Chatham, 337 F.Supp.2d 709, 723–24 (M.D.N.C. 2004) (emphasis added).

Viewing the Amended Complaint in the light most favorable to Plaintiff, the undersigned is not persuaded at this time that Plaintiff's ADA claim must be dismissed as time-barred.  It appears to the undersigned that Plaintiff's ADA Charge of Discrimination was filed within the 180-days of his official termination.  See (Document Nos. 13-1 and 14-1).  Consistent with Sheaffer, the latest date of discrimination indicated on the Charge was February 6, 2018.  (Document No. 14-1, p. 3).  Moreover, there appears to be no dispute that the alleged unlawful employment action here was Plaintiff's termination, and no dispute that such termination was effective on February 6, 2018.  Thus, it appears that Plaintiff's Charge was timely filed on Monday August 6, 2018.  See (Document No. 14, p. 5) (citing 29 CFR 1614.604(d)).

9

Since Defendant has raised no other grounds on which the Court should dismiss Plaintiff's ADA claim, the undersigned will recommend that the motion to dismiss Plaintiff's ADA claim (Count III) be **denied**.  See Sheaffer, 337 F.Supp.2d at 725.

**3. Public Policy**

Finally, Defendant argues that Plaintiff has failed to satisfy the prerequisites to pursue a claim for wrongful termination in violation of North Carolina's public policy. (Document No. 13, p. 11-12).  Defendant notes that there are no allegations that Plaintiff filed a worker's compensation claim or an administrative charge with the North Carolina Department of Labor.  (Document No. 13, p. 12).  Defendant concludes that having failed to take these steps, Plaintiff is precluded from raising a public policy claim based on alleged worker's compensation retaliation.  (Document No. 13, pp. 12-13) (citations omitted); see also (Document No. 7, pp. 8-9).

Plaintiff's opposition brief fails to respond to Defendant's arguments, or even mention his public policy claim.  (Document No. 14).  In reply, Defendant persuasively argues that based on Plaintiff's failure to object to this argument for dismissal he has abandoned his wrongful termination in violation of public policy claim.  (Document No. 16, p. 6) (citations omitted).

Based on Defendant's arguments, the undersigned will recommend that the motion to dismiss Plaintiff's public policy claim (Count IV) be **granted**.

## IV.  RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that "Defendant's Partial Motion To Dismiss Plaintiff's Amended Complaint" (Document No. 12) be **GRANTED in part** and **DENIED in part**, as discussed herein.

**IT IS FURTHER RECOMMENDED** that:  (1) Plaintiff be allowed to file a Second Amended Complaint consistent with the Court's decision on the pending motion and naming the

proper Defendant; and (2) that the parties be directed to immediately conduct an Initial Attorney's Conference pursuant to Local Rule 16.1 and Fed.R.Civ.P. 26.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

**IT IS SO RECOMMENDED**.

Signed: March 27, 2019

David C. Keesler
United States Magistrate Judge

11

Case 3:18-cv-00269-RJC-DCK   Document 17   Filed 03/28/19   Page 11 of 11